# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| BARRY DANIELS,<br>Petitioner, | Case No. 1:12-cv-162 |
| vs. | Barrett, J.<br>Litkovitz, M.J. |
| WARDEN, CORRECTIONAL<br>RECEPTION CENTER,<br>Respondent. | **REPORT AND<br>RECOMMENDATION** |

Petitioner, an inmate in state custody at the Correctional Reception Center in Orient, Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition; respondent's return of writ with exhibits, including a copy of the trial transcript; and petitioner's "traverse" in reply to the return of writ. (Docs. 4, 9, 10).

## I. PROCEDURAL HISTORY

### State Trial Proceedings

On November 7, 2008, the Hamilton County, Ohio, grand jury returned an indictment charging petitioner with two counts of rape in violation of Ohio Rev. Code § 2907.02(A)(1)(b) and one count of gross sexual imposition in violation of Ohio Rev. Code § 2907.05(B). (Doc. 9, Exs. 1, 14). The Ohio Court of Appeals, First Appellate District, has provided the following summary of the facts that led to petitioner's indictment based on evidence presented at petitioner's subsequent trial:[1]

---

[1] The Ohio appellate court summarized the facts in a decision issued on October 29, 2010, affirming the trial court's judgment of conviction and sentence. (See Doc. 9, Ex. 9). 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because petitioner has not presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, those findings are presumed to be correct. *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

At trial, the State presented evidence that Daniels had committed these offenses against his nine-year-old niece, T.S. On September 17, 2008, T.S. spent the day with Daniels and his daughter Barresha. T.S. received permission from her mother, Auja Williams, to spend the night with Barresha at Daniels' apartment. T.S. and Barresha slept in a bed together in Daniels' living room. The two watched movies while lying in bed. T.S. testified that, after Barresha had fallen asleep, Daniels came into the living room and turned off the television. Daniels then placed the covers over the girls' heads. After covering her face, Daniels lifted T.S.'s leg and began rubbing his hand on her private parts. He placed his hands underneath her underwear and inserted his fingers in her vagina. T.S. began crying and told Daniels to stop. The next morning she told Barresha that somebody had touched her the night before. After Daniels took her back home, she also told her mother what had happened.

Auja Williams testified that she had sensed that something was wrong with T.S. immediately upon her return home. She questioned T.S., who revealed what Daniels had done. Williams testified that she had called Daniels to confront him. Daniels told Williams that the previous night T.S. had dreamt about being molested. T.S. denied dreaming that these events had occurred. Williams reported the rape to police that morning, and T.S. was taken to Cincinnati Children's Hospital for medical examination.

Cincinnati Police Detective Malynda Jordan testified at trial regarding her investigation of this case. Jordan interviewed Daniels' daughter Barresha and stated that, based on their interview, she believed that Barresha had been coached regarding what to say about the incident. Acting on this suspicion, Detective Jordan obtained records of all Daniels' jail conversations. These conversations were played for the jury. They included Daniels' instructions to Barresha regarding what she needed to say at trial. He instructed Barresha to say that she had seen her father turn off the television and go immediately to bed, and that he had never touched T.S.

The state presented additional testimony from Kathi Makoroff, the doctor who had examined T.S. at the hospital's Mayerson Center. Makoroff testified that T.S.'s genitalia had not shown any sign of trauma, but that such a finding was normal in cases of child abuse. Makoroff revealed that 90% of cases involving actual abuse showed such findings, and she believed that abuse had been probable in this case. After Makoroff testified, the state played for the jury a videotape of T.S.'s interview with a social worker at the Mayerson Center, in which she described how Daniels had touched her.

Daniels testified on his own behalf and denied all of T.S.'s allegations. He testified that the morning after T.S. had spent the night with Barresha, T.S. had told him that she had dreamt that a man had broken into Daniels' apartment and touched her. Daniels further attempted to explain his instructions to Barresha on the recorded conversations. He explained that Barresha suffered from attention deficit disorder and that, as a result, he needed to "parent" her because she had trouble comprehending information. While testifying, Daniels also revealed to

2

the jury that he had served time in prison for a prior rape conviction. (*Id.*, Ex. 9, pp. 2-4).

Prior to trial, petitioner's counsel filed a motion on petitioner's behalf, requesting that the social worker's videotaped interview of T.S. be excluded from evidence to be presented at trial, which apparently was denied. (*Id.*, Ex. 2 & Trial Tr. 8). In April 2009, the matter proceeded to trial before a jury, but ended in a mistrial because the jury was unable to reach a verdict. (*See id.*, Ex. 7, p. 1 & Ex. 14). Prior to petitioner's second trial, petitioner's counsel renewed the motion to exclude the social worker's videotaped interview of T.S. and also filed a motion to exclude "victim-impact" testimony at trial. (*Id.*, Ex. 3 & Trial Tr. 8). The trial court denied both motions. (*See id.*, Trial Tr. 5-11).

The matter then proceeded a second time to trial before a jury, which found petitioner guilty as charged. (*Id.*, Ex. 4). After a sentencing hearing was held, the trial court issued a Judgment Entry on July 16, 2009, merging the two rape counts as "allied offenses of similar import" and sentencing petitioner to consecutive prison terms of "life without parole" for the rape offense and five (5) years for the gross sexual imposition offense. (*Id.*, Ex. 5).

## State Appeal Proceedings

With the assistance of new counsel for appeal purposes, petitioner timely appealed to the Ohio Court of Appeals, First Appellate District. (Doc. 9, Ex. 6). Petitioner presented four assignments of error for the court's consideration:

> 1. The trial court erred, to the prejudice of appellant, when it permitted the admission of the forensic interview footage.
>
> 2. The trial court erred, to the prejudice of appellant, by admitting inflammatory victim-impact testimony.
>
> 3. The judgment of the trial court is contrary to the manifest weight of the evidence.
>
> 4. Defendant's conviction is not supported by sufficient evidence.

3

(*Id.*, Ex. 7).

On October 29, 2010, the Ohio Court of Appeals issued a Decision overruling petitioner's assignments of error and affirming the trial court's judgment. (*Id.*, Ex. 9).

Petitioner next filed a timely *pro se* notice of appeal and memorandum in support of jurisdiction with the Ohio Supreme Court. (*Id.*, Exs. 10-11). In his memorandum in support of jurisdiction, petitioner presented two propositions of law challenging (1) the "admission of the foren[s]ic interview footage," and (2) the weight and sufficiency of the evidence supporting his conviction. (*Id.*, Ex. 11).

On March 2, 2011, the Ohio Supreme Court denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.*, Ex. 12).

## Motion For New Trial

On March 11, 2011, petitioner filed a motion for leave to file a motion for new trial with the trial court. (Doc. 9, Ex. 13). In his attached motion for new trial, petitioner alleged new claims of jury misconduct, ineffective assistance of trial counsel, and prosecutorial misconduct. (*See id.*). It appears from the on-line docket records maintained by the Hamilton County Clerk of Courts that the motion was never ruled on.[2] However, it also appears that on January 31, 2013, petitioner filed a supplemental motion for new trial, which was denied by the trial court on the same date. Petitioner filed a notice of appeal to the Ohio Court of Appeals, First Appellate District, on March 8, 2013. Apparently, the appeal is still pending before that court.[3]

## Federal Habeas Corpus

Petitioner initiated the instant federal habeas corpus action in February 2012. (*See* Doc.

---

[2] The record pertaining to petitioner's criminal case can be found at the following link: http://www.courtclerk.org/case_summary.asp?sec=history&casenumber=B0808717.

[3] The record pertaining to the pending appeal matter can be found at the following link: http://www.courtclerk.org/case_summary.asp?sec=history&casenumber=C1300150.

4

1). In the petition, he has asserted three grounds for relief:

> **Ground One:** Petitioner was denied due process when the evidence was insufficient to convict him.
>
> **Ground Two:** Petitioner was denied due process when he was prejudiced by the admission of the forensic interview footage.
>
> **Ground Three:** Petitioner was denied due process when he was prejudiced by the inflammatory victim-impact testimony.

(Doc. 4, pp. 6, 8, 9).

In response to the petition, respondent filed a return of writ, arguing in part that (1) the claim alleged in Ground Three is waived because petitioner "failed to provide the Ohio Supreme Court with an opportunity to correct the alleged constitutional error," and (2) the claim alleged in Ground Two is "not cognizable" to the extent that petitioner asserts only a claim of evidentiary error under Ohio law. (Doc. 9, pp. 16, 20). In addition, respondent contended that petitioner has not demonstrated he is entitled to relief based on the merits of the claim alleged in Ground One challenging the sufficiency of the evidence or any constitutional claim alleged in Ground Two of the petition. (*Id.*, pp. 11-19).

Petitioner has filed a "traverse" in reply to respondent's return of writ. (Doc. 10). In that pleading, petitioner concedes that "Ground Two of his habeas corpus petition is not cognizable for federal habeas corpus review" and that "Ground Three of his habeas corpus petition is procedurally defaulted." (*Id.*, p. 2). He states that he, therefore, no longer "wishes . . . to pursue" those claims for relief and only wishes to proceed with the claim alleged in Ground One challenging the sufficiency of the evidence supporting his rape and gross sexual imposition convictions. (*Id.*). Because petitioner has abandoned the claims alleged in Grounds Two and Three of the petition in his most recent pleading, this Court will only consider the sufficiency of evidence claim alleged in Ground One, which was exhausted in the state courts and is thus subject to review on the merits.

## II. OPINION

### Petitioner Has Not Demonstrated He Is Entitled To Federal Habeas Relief Based On The Claim Alleged In Ground One Challenging The Sufficiency Of The Evidence

In this federal habeas case, the applicable standard of review governing the adjudication of constitutional issues raised by plaintiff to the state courts is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)), *cert. denied*, 132 S.Ct. 1743 (2012). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams*, 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court recently extended its ruling in *Harrington* to hold that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams,* __ U.S. __, 133 S.Ct. 1088, 1091 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington,* 131 S.Ct. at 786. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the

7

conviction became "final." *Greene v. Fisher,* __ U.S. __, 132 S.Ct. 38, 44-45 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). In *Greene,* 132 U.S. at 44, the Court explained:

> [W]e held last term in *Cullen v. Pinholster,* 563 U.S. __, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.,* at __, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'" Id.,* at __, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte,* 654 F.3d at 600 (quoting *Landrum v. Mitchell,* 625 F.3d 905, 914 (6th Cir. 2010), *cert. denied,* 132 S.Ct. 127 (2011)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

In this case, the Ohio Court of Appeals was the only state court to issue a reasoned decision addressing the merits of petitioner's assignment of error challenging the sufficiency of the evidence, as well as petitioner's corollary state-law claim challenging the weight of the evidence. The court rejected both claims, reasoning in pertinent part as follows:

> Following our review of the record, we conclude that Daniels' convictions were supported by sufficient evidence. Daniels was convicted of rape pursuant to R.C. 2907.02(A)(1)(b), which states that "[n]o person shall engage in sexual conduct

8

> with another who is not the spouse of the offender *** when *** [t]he other person is less than thirteen years of age." Daniels was additionally convicted of gross sexual imposition under R.C. 2907.05, which states that "[n]o person shall knowingly touch the genitalia of another, when the touching is not through clothing, the other person is less than twelve years of age *** and the touching is done with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." T.S.'s testimony that Daniels had rubbed her private parts and had inserted his fingers into her vagina was sufficient to establish the elements of these offenses.
>
> We further conclude that Daniels' convictions were not against the manifest weight of the evidence. The jury was in the best position to judge the credibility of the witnesses, and it was entitled to reject Daniels' testimony that T.S. had dreamt about being molested. Weighing on the jury's credibility determination were Daniels' instructions to his daughter Barresha regarding exactly how to testify and Doctor Makoroff's opinion that abuse had been probable despite the lack of trauma to T.S.'s genitalia. This is not the rare case in which the jury lost its way and created a manifest miscarriage of justice in finding Daniels guilty. Daniels' convictions were supported by sufficient evidence and were not against the manifest weight of the evidence.

(Doc. 9, Ex. 9, pp. 4-5) (footnotes citing Ohio cases omitted).

The clearly-established standard of review for evaluating the merits of constitutional claims challenging the sufficiency of the evidence was established by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). As the Supreme Court held in *Jackson*, because the Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense, *In Re Winship,* 397 U.S. 358, 363-64 (1970), "the relevant question" in assessing the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original).

Under the *Jackson* standard, the State is not required to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of

the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir. 1983). It is the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson,* 443 U.S. at 319. Consequently, the reviewing court is not permitted to reweigh the evidence, reevaluate the credibility of witnesses, make its own subjective determination of guilt or innocence, or otherwise substitute its opinion for that of the jury. *See id.* at 318-19 & n.13; *see also United States v. Fisher,* 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009)); *York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (per curiam).

"Circumstantial evidence alone is sufficient to support a conviction." *Newman v. Metrish,* 543 F.3d 793, 796 (6th Cir. 2008) (quoting *Johnson v. Coyle,* 200 F.3d 987, 992 (6th Cir. 2000)); *see also Fisher,* 648 F.3d at 450. Due process is satisfied as long as such evidence is enough for a rational trier of fact to make a permissible *inference* of guilt, as opposed to a reasonable *speculation* that the petitioner is guilty of the charged crime. *Newman,* 543 F.3d at 796-97 (and Sixth Circuit cases cited therein).

Moreover, federal habeas review of a claim challenging the sufficiency of the evidence is even further limited. As the Sixth Circuit explained in *Brown,* 567 F.3d at 205, the federal habeas court is "bound by two layers of deference to groups who might view facts differently than [the habeas court] would." The federal habeas court must defer not only to the trier of fact's findings as required by *Jackson,* but under 28 U.S.C. § 2254(d), must also "defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Id.* (emphasis in original); *see also Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011), *cert. denied,* 132 S.Ct. 1927 (2012); *Anderson v. Trombley,* 451 F. App'x 469, 474-75 (6th Cir. 2011), *cert. denied,* 132 S.Ct. 1152 (2012). Therefore, as the Sixth Circuit went on to emphasize in *Brown*:

> [W]e cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt. We cannot

> even inquire whether *any* rational trier of fact would conclude that petitioner . . . is guilty of the offenses for which he was charged. Instead, we must determine whether the Ohio Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial.

*Brown,* 567 F.3d at 205 (emphasis in original).

Applying the double-layer deferential standard to the case-at-hand, the undersigned is convinced that the Ohio Court of Appeals' sufficiency determination is neither contrary to nor an unreasonable application of *Jackson.*

As the Ohio Court of Appeals stated, in order to establish petitioner's guilt for rape under Ohio Rev. Code § 2907.02(A)(1)(b), the State was required to prove beyond a reasonable doubt that petitioner engaged in "sexual conduct" with another person, who was not his spouse and was less than thirteen years of age. Under Ohio law, "sexual conduct" includes "the insertion, however slight, of any part of the body . . . into the vaginal or anal opening of another." *See* Ohio Rev. Code § 2907.01(A). Moreover, to establish petitioner's guilt for gross sexual imposition under Ohio Rev. Code § 2907.05(B), the State was required to prove beyond a reasonable doubt that petitioner "knowingly touch[ed] the genitalia of another, when the touching is not through clothing, the other person is less than twelve years of age, . . . and the touching is done with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

Here, it is undisputed that the victim was not petitioner's spouse and that she was nine years of age at the time of petitioner's trial. (*See* Doc. 9, Trial Tr. 146, 148). T.S. testified at trial that petitioner knelt by the bed where she was laying, lifted up her leg, placed his hand underneath her underwear, and began rubbing her "private," which she clarified was the "vagina area" between her legs. (*Id.,* Trial Tr. 158-59). T.S. stated that when petitioner was rubbing her "private part," his hand stayed "outside" of her vagina. (*Id.,* Trial Tr. 159). T.S. testified further

that at one point, petitioner also inserted his fingers inside her vagina. (*Id.*, Trial Tr. 160). T.S. said that petitioner went back to "rubbing [her] private" when she told him to stop. (*Id.*). T.S. stated that when petitioner finished, she "curled up into a ball." She said: "I was feeling hurt. I was feeling sad. I felt like I wanted to call my mama up. I was crying and everything." (*Id.*).

As the Ohio Court of Appeals reasonably determined in accordance with *Jackson*'s deferential standard of review, T.S.'s testimony was sufficient, standing alone, to establish petitioner's guilt for the charged rape and felonious sexual imposition offenses. *See, e.g., Tucker v. Palmer*, 541 F.3d 652, 658-59 (6th Cir. 2008) (and Sixth Circuit cases cited therein) (in disagreeing with the dissent's concern about the sufficiency of the evidence due to the fact that the only evidence of guilt was the victim's testimony, the Sixth Circuit pointed out that it had "long held that the testimony of the victim alone is constitutionally sufficient to sustain a conviction"). Here, a rational juror could infer that petitioner was guilty beyond a reasonable doubt of the gross sexual imposition offense based on T.S.'s testimony that petitioner placed his hand underneath her underwear and began rubbing the outside of her "private." Furthermore, a rational juror could infer that petitioner was guilty beyond a reasonable doubt of the rape offense based on T.S.'s testimony that petitioner also inserted his fingers inside her vagina.

Petitioner argues in his "traverse" brief that the evidence was insufficient to establish his guilt because the case essentially involved a "credibility contest" between T.S. and petitioner, who testified in his own defense and provided a different version of events, which the State "won" only because the State was able to introduce evidence of petitioner's prior rape conviction. (*See* Doc. 10). However, as the state appellate court apparently understood in ruling on petitioner's claim, under *Jackson*, the reviewing court is precluded from reevaluating the credibility of witnesses or reweighing the evidence. *See Jackson*, 443 U.S. at 318-19 & n.13; *see also Fisher*, 648 F.3d at 450. Rather, the Court must defer to the jury's resolution of the

conflicts in the evidence in favor of the prosecution. *See Jackson*, 443 U.S. at 326.

In any event, contrary to petitioner's contention and as the Ohio Court mentioned when ruling on the corollary state-law issue, other evidence was presented at trial to support T.S.'s position and to undermine petitioner's version of events. Specifically, T.S.'s mother, Auja Williams, corroborated T.S.'s testimony that she immediately told her mother when she returned home the next day about what had occurred at petitioner's home. (*See* Doc. 9, Trial Tr. 188-89). Williams also testified that she did not believe petitioner's story that T.S. had merely "dream[ed] that she was being molested." (*Id.*, Trial Tr. 193). Williams stated:

> I told him that . . . my daughter don't know what molestation is. . . . She ain't never used that word before. We ain't never used that word around her. She just doesn't know what molestation is.

(*Id.*, Trial Tr. 193). In addition, Dr. Kathi Makoroff, who conducted T.S.'s medical examination, testified that it was her opinion that T.S.'s case was "'concerning/probable' for abuse" even though she could find "no signs of trauma" to T.S.'s genitalia, a "normal" occurrence in child abuse cases. (*Id.*, Trial Tr. 331, 338). Dr. Makoroff stated that she is "one of the more conservative physicians" when it comes to making such a diagnosis. (*Id.*, Trial Tr. 337-38).

Viewing all the evidence in the light most favorable to the prosecution and deferring to the jury's resolution of the credibility of the witnesses and their conflicting testimony as required under *Jackson,* 443 U.S. at 318-19 & n.13, 326, a rational juror could find that petitioner was guilty of both rape and gross sexual imposition.

Accordingly, in sum, the undersigned concludes that the Ohio Court of Appeals' adjudication of petitioner's constitutional claim challenging the sufficiency of the evidence is neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court in *Jackson*. Petitioner has not shown that "fairminded jurists could disagree" that the Ohio Court of Appeals' adjudication of the constitutional issue conflicts

with the relevant Supreme Court precedents, or "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." See *Harrington*, 131 S.Ct. at 786-87. Therefore, petitioner is not entitled to relief based on the claim alleged in Ground One of the petition.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 4) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claim alleged in Ground One of the petition, which is the sole claim subject to review given that petitioner has abandoned his other two grounds for relief. Petitioner has not made a substantial showing that Ground One constitutes a "viable claim of the denial of a constitutional right" or that the issues presented in that ground for relief are "adequate to deserve encouragement to proceed further." *See Slack*, 529 U.S. at 475 (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).

Date: 7/1/13

Karen L. Litkovitz
United States Magistrate Judge

14

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| BARRY DANIELS,<br>    Petitioner, | Case No. 1:12-cv-162 |
| vs. | Barrett, J.<br>Litkovitz, M.J. |
| WARDEN, CORRECTIONAL<br>RECEPTION CENTER,<br>    Respondent. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Barry Daniels # 608-529
CRC
PO Box 300
Orient, OH 43146

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☒ Agent
☐ Addressee

B. Received by (Printed Name) | C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number
(Transfer from service label)
7011 3500 0001 5345 9152

PS Form 3811, February 2004 — Domestic Return Receipt — 102595-02-M-1540